## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF MINNESOTA, | ) ) ) ) **PRESERVATION OF ASSETS ORDER** |
| *Plaintiffs,* | ) ) |
| v. | ) ) ) **Case No.** 06-3631 (RHK/AJB) |
| ALLTEL CORPORATION and MIDWEST WIRELESS HOLDINGS L.L.C., | ) ) ) |
| *Defendants.* | ) ) ) ) |

Pursuant to the Preservation of Assets Stipulation by and between the parties to the above-captioned action, it is hereby ORDERED:

### I. Definitions

As used in this Preservation of Assets Order:

A.  "Acquirer" means the entity to whom defendants divest the Divestiture Assets.

B.  "ALLTEL" means defendant ALLTEL Corporation, a Delaware corporation with headquarters in Little Rock, Arkansas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents, and employees.

C.  "CMA" means cellular market area which is used by the Federal Communications Commission ("FCC") to define cellular license areas and which consists of Metropolitan Statistical Areas ("MSAs") and Rural Service Areas ("RSAs").

D.  "Divestiture Assets" means the mobile wireless telecommunications services businesses to be divested under the Final Judgment, including all types of assets, tangible and intangible, used by defendants in the operation of the mobile wireless telecommunications services businesses to be divested.  "Divestiture Assets" shall be construed broadly to accomplish the complete divestiture of the entire business of ALLTEL in each of the following RSA license areas as required by the Final Judgment and to ensure that the divested mobile wireless telecommunications services businesses remain viable, ongoing businesses:

(1)  Minnesota RSA-7 (CMA 488);

(2)  Minnesota RSA-8 (CMA 489);

(3)  Minnesota RSA-9 (CMA 490); and

(4) Minnesota RSA-10 (CMA 491)

provided that ALLTEL may retain all of the PCS spectrum it currently holds in each of these RSAs and equipment that is used only for wireless transmissions over this PCS spectrum, and provided that ALLTEL need not divest the assets used solely to operate ALLTEL's GSM roaming business in these RSAs, including GSM roaming contracts and equipment.

The Divestiture Assets shall include, without limitation, all types of real and personal property, monies and financial instruments, equipment, inventory, office furniture, fixed assets and furnishings, supplies and materials, contracts, agreements, leases, commitments, spectrum licenses issued by the FCC and all other licenses, permits and

authorizations, operational support systems, cell sites, network infrastructure, switches,

customer support and billing systems, interfaces with other service providers, business and

customer records and information, customer contracts, customer lists, credit records,

accounts, and historic and current business plans which relate primarily to the wireless

businesses being divested, as well as any patents, licenses, sub-licenses, trade secrets,

know-how, drawings, blueprints, designs, technical and quality specifications and protocols,

quality assurance and control procedures, manuals and other technical information

defendant ALLTEL supplies to its own employees, customers, suppliers, agents, or

licensees, and trademarks, trade names and service marks or other intellectual property,

including all intellectual property rights under third-party licenses that are capable of being

transferred to an Acquirer either in their entirety, for assets described in (1) below, or

through a license obtained through or from ALLTEL, for assets described in (2) below;

provided that defendants shall only be required to divest Multi-line Business Customer

contracts, if the primary business address for that customer is located within any of the

four license areas described herein, and further, any subscriber who obtains mobile

wireless telecommunications services through any such contract retained by defendants and

who are located within the four geographic areas identified above, shall be given the option

to terminate their relationship with defendants, without financial cost, at any time within

one year of the closing of the Transaction.  Defendants shall provide written notice to these

subscribers within 45 days after the closing of the Transaction of the option to terminate.

The divestiture of the Divestiture Assets shall be accomplished by:

(1)   transferring to the Acquirer the complete ownership and/or other rights to

the assets (other than those assets used substantially in the operations of

ALLTEL's overall wireless telecommunications services business which

must be retained to continue the existing operations of the wireless

properties that defendants are not required to divest, and that either are not

capable of being divided between the divested wireless

telecommunications services businesses and those not divested, or are

assets that the defendants and the Acquirer agree, subject to approval of

plaintiff United States upon consultation with plaintiff Minnesota, shall

not be divided); and

(2)   granting to the Acquirer an option to obtain a nonexclusive, transferable

license from defendants for a reasonable period, subject to approval of

plaintiff United States upon consultation with plaintiff Minnesota, at the

election of an Acquirer to use any of ALLTEL's retained assets under

paragraph (1) above, used in the operation of the mobile wireless

telecommunications services businesses being divested, so as to enable the

Acquirer to continue to operate the divested mobile wireless

telecommunications services businesses without impairment.  Defendants

shall identify in a schedule submitted to plaintiffs and filed with the Court,

as expeditiously as possible following the filing of the Complaint and in

any event prior to any divestiture and before the approval by the Court of

4

the Final Judgment, any intellectual property rights under third-party

licenses that are used by the mobile wireless telecommunications services

businesses being divested but that defendants could not transfer to an

Acquirer entirely or by license without third-party consent, and the specific

reasons why such consent is necessary and how such consent would be

obtained for each asset.

E. "GSM" means global system for mobile communications which is one of the

standards used for the infrastructure of digital cellular service.

F. "Midwest Wireless" means defendant Midwest Wireless Holdings L.L.C., a

Delaware Limited Liability Company, with headquarters in Mankato, Minnesota, its

successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and

joint ventures, and their directors, officers, managers, agents, and employees.

G. "Multi-line Business Customer" means a corporate or business customer that

contracts with ALLTEL for mobile wireless services to provide multiple telephones to its

employees or members whose services are provided pursuant to a contract with the

corporate or business customer.

H. "Transaction" means the Transaction Agreement between ALLTEL and Midwest

Wireless, dated November 17, 2005.

## II.  Objectives

The proposed Final Judgment filed in this case is meant to ensure defendants'

prompt divestiture of the Divestiture Assets for the purpose of preserving viable

5

competitors in the provision of mobile wireless telecommunications services in order to remedy the effects that plaintiffs allege would otherwise result from ALLTEL's acquisition of Midwest Wireless. This Preservation of Assets Order ensures, prior to such divestitures, that competition is maintained during the pendency of the ordered divestitures, and that the Divestiture Assets remain ongoing business concerns and the Divestiture Assets remain economically viable. The Divestiture Assets will remain, as provided herein, preserved, independent and uninfluenced by defendants.

### III.  Jurisdiction and Venue

This Court has jurisdiction over the subject matter of this action and each of the parties hereto, and venue of this action is proper in the United States District Court for the District of Minnesota. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, 15 U.S.C. § 18.

### IV.  Compliance With and Entry of Final Judgment

A.  The parties have stipulated that a proposed Final Judgment in the form lodged with this Court by plaintiff United States may be entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, and without further notice to any party or other proceedings, provided that plaintiff United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on all other parties and by filing that notice with the Court.

B.  Defendants shall abide by and comply with the provisions of this Preservation of Assets Order and the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of the Preservation of Assets Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment and this Preservation of Assets Order as though the same were in full force and effect as an order of the Court.

C.  Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Preservation of Assets Order.

D.  This Preservation of Assets Order shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E.  In the event (1) plaintiff United States has withdrawn its consent, as provided in Section IV.A above, or (2) the proposed Final Judgment is not entered, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment and this Preservation of Assets Order, then the parties are released from all further obligations under this Preservation of Assets Order, and the making of the Preservation of Assets Stipulation shall be without prejudice to any party in this or any other proceeding.

F.  Defendants represent that the divestitures ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.  Management Trustee

A.  Plaintiff United States, having consulted with plaintiff Minnesota, nominates David S. Turetsky as Management Trustee in this case, and defendants have no objection to his immediate appointment by this Court.  Accordingly, this Court appoints David S.Turetsky as Management Trustee to serve as manager of the Divestiture Assets until the Divestiture Assets are sold or transferred to a Divestiture Trustee pursuant to Section V of the proposed Final Judgment.  Nothing in this Preservation of Assets Order shall be interpreted to prevent the Management Trustee from becoming the Divestiture Trustee pursuant to Section V of the proposed Final Judgment.

B.  Prior to the closing of the Transaction, defendants shall enter into a trust agreement with David S. Turetsky, subject to the approval of plaintiff United States, in its sole discretion upon consultation with plaintiff Minnesota, that will grant the rights, powers, and authorities necessary to permit him to perform the duties and responsibilities of the Management Trustee pursuant to this Preservation of Assets Order.  The trust agreement shall enable him, on or before the date of the closing of the Transaction, to assume all rights, powers, and authorities necessary to perform his duties and responsibilities, pursuant to the Preservation of Assets Order and the proposed Final

Judgment and consistent with their purposes.  David S. Turetsky or any other subsequently

appointed Management Trustee shall serve at the cost and expense of defendants, on such

terms and conditions as plaintiff United States approves upon consultation with plaintiff

Minnesota, with a fee arrangement that is reasonable in light of the person's experience and

responsibilities.

      C.  The Management Trustee will have the following powers and  responsibilities

with respect to the Divestiture Assets:

      (1)    the Management Trustee will have the power to manage the
Divestiture Assets in the ordinary course of business consistent with
this Preservation of Assets Order.  Only with the prior written
approval of plaintiff United States upon consultation with plaintiff
Minnesota, may the Management Trustee make any decision, take any
action, or enter any transaction that is outside the ordinary course of
business;

      (2)    the Management Trustee shall have a duty, consistent with the terms
of this Preservation of Assets Order and the proposed Final Judgment,
to monitor the organization of the Divestiture Assets; manage the
Divestiture Assets in order to maximize their value so as to permit
expeditious divestitures in a manner consistent with the proposed
Final Judgment; maintain the independence of the Divestiture Assets
from defendants; control and operate the Divestiture Assets to ensure

9

that the Divestiture Assets remain an independent, ongoing, economically viable competitor to the other mobile wireless telecommunications services providers; and assure defendants' compliance with their obligations pursuant to this Preservation of Assets Order and the proposed Final Judgment;

(3)   the Management Trustee shall have the authority to retain, at the cost and expense of defendants, such consultants, accountants, attorneys, and other representatives and assistants as are reasonably necessary to carry out the Management Trustee's duties and responsibilities;

(4)   the Management Trustee and any consultants, accountants, attorneys, and any other persons retained by the Management Trustee, shall have full and complete access to all personnel, books, records, documents, and facilities of the Divestiture Assets or to any other information relevant to the Divestiture Assets as the Management Trustee may reasonably request, including, but not limited to, all documents and records kept in the normal course of business that relate to the Divestiture Assets.  Defendants shall develop such financial or other information as the Management Trustee may request and shall cooperate with the Management Trustee.  Defendants shall take no action to interfere with or impede the Management Trustee's ability to monitor defendants' compliance with this Preservation of Assets

Order and the proposed Final Judgment or otherwise to perform his duties and responsibilities consistent with the terms of this Preservation of Assets Order and the proposed Final Judgment;

(5)    the Management Trustee will ensure that the Divestiture Assets shall be staffed with sufficient employees to maintain their viability and competitiveness.  To the extent that any employee whose principal responsibilities relate to the Divestiture Assets leaves or has left the Divestiture Assets prior to divestiture of the Divestiture Assets, the Management Trustee may replace departing or departed employees with persons who have similar experience and expertise or determine not to replace such departing or departed employees; and

(6)    30 days after the Management Trustee has been appointed by the Court, and thereafter on the 25th day of each month until the Divestiture Assets are either transferred to an Acquirer or to the Divestiture Trustee, the Management Trustee shall report in writing to the plaintiffs concerning the efforts to accomplish the purposes of this Preservation of Assets Order and the proposed Final Judgment. Included within that report shall be the Management Trustee's assessment of the extent to which the Divestiture Assets are meeting (or exceeding) their projected goals as those are reflected in existing or revised operating plans, budgets, projections or any other regularly

11

prepared financial statements and the extent to which defendants are

fulfilling their responsibilities under this Preservation of Assets

Order and the proposed Final Judgment.  If the Management Trustee

designates any information as "confidential" in any report he submits

pursuant to this Preservation of Assets Order, any plaintiff that

objects to the designation of information as "confidential" will notify

the Management Trustee within five business days after the

submission of such report.

D.  The following limitations shall apply to the Management Trustee:

   (1)     the Management Trustee shall not be involved, in any way, in the

           operations of the other businesses of defendants;

   (2)     the Management Trustee shall have no financial interests affected by

           defendants' revenues, profits or profit margins, except that the

           Management Trustee's compensation for managing the Divestiture

           Assets may include economic incentives dependent on the financial

           performance of the Divestiture Assets provided that those incentives

           are consistent with the objectives of this Preservation of Assets Order

           and the proposed Final Judgment and are approved by plaintiff United

           States in consultation with plaintiff Minnesota; and

(3)     the Management Trustee shall be prohibited from performing any

further work for defendants for two years after the close of the

divestiture transactions.

E.  Defendants and the Management Trustee will take all reasonable efforts to

preserve the confidentiality of information that is material to the operation of either the

Divestiture Assets or defendants' businesses.  Defendants' personnel supplying services to

the Divestiture Assets pursuant to this Preservation of Assets Order must retain and

maintain the confidentiality of any and all confidential information material to the

Divestiture Assets.  Except as permitted by this Preservation of Assets Order and the

proposed Final Judgment, such persons shall be prohibited from providing, discussing,

exchanging, circulating or otherwise furnishing the confidential information of the

Divestiture Assets to or with any person whose employment involves any of defendants'

businesses, except as necessary to fulfill the purposes of this Preservation of Assets Order

and the proposed Final Judgment.

F.  If  in the judgment of the Management Trustee, defendants fail to provide the

services listed in Section VI of this Preservation of Assets Order to the satisfaction of the

Management Trustee, upon notification to defendants and approval by plaintiff United States

upon consultation with plaintiff Minnesota, the Management Trustee may engage third

parties unaffiliated with the defendants to provide those services for the Divestiture Assets,

at the cost and expense of defendants, provided that defendants may have reasonable access

to information to satisfy themselves that after the services have been provided, the

Divestiture Assets are in compliance with all applicable laws, rules, and regulations.

G.  At the option of the Management Trustee, defendants may also provide other

products and services, on an arms-length basis provided that the Management Trustee is not

obligated to obtain any other product or service from defendants and may acquire any such

products or services from third parties unaffiliated with defendants.

H.  If the Management Trustee ceases to act or fails to act diligently and consistently

with the purposes of this Preservation of Assets Order and the proposed Final Judgment, if

the Management Trustee proposed by plaintiff United States is not approved by this Court,

resigns, or if for any other reason the Management Trustee ceases to serve in his or her

capacity as Management Trustee, plaintiff United States upon consultation with plaintiff

Minnesota, may select a substitute Management Trustee.  In this event, plaintiff United

States will identify to defendants the individual or entity it proposes to select as

Management Trustee.  Defendants must make any objection to this selection within five

business days after plaintiff notifies defendants of the Management Trustee's selection.

Upon application of the United States, the Court shall approve and appoint a substitute

Management Trustee.  Within five business days of such appointment, defendants shall enter

into a trust agreement with the Management Trustee subject to the approval of plaintiff

United States in its sole discretion upon consultation with plaintiff Minnesota as described

in Section V.B of this Preservation of Assets Order.

## VI.  **Preservation of Assets**

14

Until the divestitures required by the proposed Final Judgment have been accomplished, except as otherwise approved in advance in writing by plaintiff United States:

A. Defendants and the Management Trustee shall preserve, maintain, and continue to support the Divestiture Assets, take all steps necessary to manage the Divestiture Assets in order to maximize their revenue, profitability and viability and permit expeditious divestitures in a manner consistent with this Preservation of Assets Order and the proposed Final Judgment.

B. The Divestiture Assets shall be operated by the Management Trustee as part of an independent, ongoing, economically viable business that competes with other mobile wireless telecommunications services providers operating in the same license area. Defendants and the Management Trustee shall take all steps necessary to ensure that:

(1) the management, sales, and operations of the Divestiture Assets are independent from defendants' other operations; provided, however, that at the request of the Management Trustee, defendants shall include the marketing, pricing and sales of the mobile wireless telecommunications services generated by the Divestiture Assets in the license areas served by the Divestiture Assets within its marketing, promotional, and service offerings, in the ordinary course of business, in any national, regional, and local marketing programs. The defendants shall not display advertising announcing or describing benefits of the Transaction in the four divestiture markets. Nothing in

this Section shall prohibit the Management Trustee from developing his own reasonable marketing, sales, pricing or promotional offers, which shall be funded and supported by defendants;

(2)     the Divestiture Assets are maintained by adhering to normal and planned repair, capital improvement, upgrade and maintenance schedules, or at a greater level if necessary to insure that the Divestiture Assets remain competitive;

(3)     the management of the Divestiture Assets will not be influenced by defendants;

(4)     the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning marketing, pricing or sales of mobile wireless telecommunications services generated by the Divestiture Assets will be maintained in such a manner as to not disclose confidential information to defendants' employees except as provided in Section VI.K herein; and

(5)     the management of the Divestiture Assets acts to maintain and increase the sales and revenues of the Divestiture Assets, and maintain, at a minimum, at previously approved levels for 2006 and 2007, whichever are higher, all promotional, advertising, sales, marketing, and technical support for the Divestiture Assets.

C.  Defendants shall provide sufficient working capital and lines and sources of credit as deemed necessary by the Management Trustee to continue to maintain the Divestiture Assets consistent with this Preservation of Assets Order.

D.  Defendants shall resolve all outstanding obligations related to the Divestiture Assets including agent and employee compensation within 30 days of closing the Transaction.

E.  Except (1) as recommended by the Management Trustee and approved by plaintiff United States upon consultation with plaintiff Minnesota, (2) as part of a divestiture approved by plaintiff United States upon consultation with plaintiff Minnesota, in accordance with the terms of the proposed Final Judgment, or (3) as specifically provided for in the proposed Final Judgment, defendants shall not remove, sell, lease, assign, transfer, pledge or otherwise dispose of any of the Divestiture Assets outside the ordinary course of business.

F.  The Management Trustee, with defendants' cooperation consistent with this Preservation of Assets Order and the proposed Final Judgment, shall maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.  As part of the defendants' cooperation, at least five days prior to the closing of the Transaction, defendants will provide to the Management Trustee and plaintiffs financial reports for the divestiture markets in Minnesota, and for the four divested RSAs,

17

detailed management reports describing existing and future plans for human resources,

marketing, and network upgrades and capital expenditures, and the extent to which each plan

or project has been completed.  Defendants will produce these reports in a form and with

content that is acceptable to the Management Trustee and plaintiff United States upon

consultation with plaintiff Minnesota.

G.  As part of the defendants' cooperation, at least five days prior to the closing of

the Transaction, defendants will provide all reports regularly prepared by defendant ALLTEL

that measure sales activity in each of the four divestiture markets that are in a form and with

content acceptable to the Management Trustee and plaintiffs.  If these reports cannot be

produced for each of the four divestiture markets, these reports should cover the smallest

geographic area that includes the divestiture markets as is technically feasible.  If the

Transaction has not closed within seven days after the filing of the Complaint, on that day

defendants will submit to plaintiffs and the Management Trustee current copies of these

reports.

H.  Defendants shall take no action that would jeopardize, delay, or impede the sale

of the Divestiture Assets nor shall defendants take any action that would interfere with the

ability of any Divestiture Trustee appointed pursuant to the proposed Final Judgment to

operate and manage the Divestiture Assets or to complete the divestitures pursuant to the

proposed Final Judgment to an Acquirer acceptable to plaintiff United States in its sole

discretion upon consultation with plaintiff Minnesota.

I.  Within seven days of the filing of the Complaint or prior to the closing of the

Transaction, whichever is sooner, defendants shall appoint (and notify plaintiffs and the

Management Trustee of their names and titles) sufficient employees for the Divestiture

Assets, who are familiar with and have had responsibility for the management, operation,

marketing, and sales of the Divestiture Assets, to assist the Management Trustee with his

duties and responsibilities hereunder.

J.  Except for employees (1) whose primary employment responsibilities relate to

the Divestiture Assets, or (2) who are involved in providing support services to the

Divestiture Assets pursuant to Sections V and VI of this Preservation of Assets Order and

Section V of the proposed Final Judgment, defendants shall not permit any other of their

employees, officers, or directors to be involved in the operations of the Divestiture Assets.

K.  Except as required by law in the course of (1) complying with this Preservation of

Assets Order and the proposed Final Judgment; (2) overseeing compliance with policies and

standards concerning the safety, health, and environmental aspects of the operations of the

Divestiture Assets and the integrity of their financial controls; (3) defending legal claims,

investigations or enforcement actions threatened or brought against the Divestiture Assets;

or (4) obtaining legal advice, defendants' employees (excluding employees (a) whose

primary employment responsibilities relate to the Divestiture Assets, or (b) who are

involved in providing support services to the Divestiture Assets pursuant to Sections V and

VI of this Preservation of Assets Order and Section V of the proposed Final Judgment) shall

not receive, or access, or use any material confidential information, not in the public

domain, of the Divestiture Assets.  Defendants may receive or access aggregate financial information relating to the Divestiture Assets to the extent necessary to allow defendants to prepare the defendants' consolidated financial reports, tax returns, reports required by securities laws, and personnel reports.  Any such information that is obtained pursuant to this subparagraph shall be used only for the purposes set forth in this subparagraph.

L.  Defendants may offer a bonus or severance to employees whose primary employment responsibilities relate to the Divestiture Assets, that continue their employment until divestiture (in addition to any other bonus or severance to which the employees would otherwise be entitled).

M.  Until the Divestiture Assets are divested to an Acquirer acceptable to plaintiff United States in its sole discretion upon consultation with plaintiff Minnesota, defendants shall provide to the Divestiture Assets, at no cost, support services needed to maintain the Divestiture Assets in the ordinary course of business, including, but not limited to:

(1)     federal and state regulatory policy development and compliance;

(2)     human resources administrative services;

(3)     environmental, health and safety services, and developing corporate policies and insuring compliance with federal and state regulations and corporate policies;

(4)     preparation of tax returns;

(5)     financial accounting and reporting services;

(6)     audit services;

CASE 0:06-cv-03631-PJS-AJB   Document 11   Filed 09/08/06   Page 21 of 22


(7)      legal services;

(8)      routine network maintenance, repair, improvements, and upgrades;

(9)      switching, call completion, and other services necessary to allow

subscribers to use mobile wireless telecommunications services and

complete calls;

(10)     billing, customer care and customer service related functions necessary

to maintain the subscriber account and relationship;

(11)     for each retail and indirect sales outlet, a 60 day supply of inventory,

including both handsets and accessories, branded as directed by the

Management Trustee, based on each outlet's average sales for the prior

two months, and if the Management Trustee requests, ALLTEL shall make

available in sufficient quantities, branded as directed by the Management

Trustee, handsets and accessories, introduced by ALLTEL in similar

markets that are compatible with the network in the four divestiture

markets;

(12)     the financial reports described in Section VI.F shall be provided on a

monthly basis; and

(13)     the sales reports described in Section VI.G shall be provided on a daily

basis.

N.  Prior to the closing of the Transaction, defendants will notify plaintiffs in writing

of the steps defendants have taken to comply with this Section.  If the Transaction has not

closed within seven days after the filing of the Complaint, on that day defendants will submit

to plaintiffs and the Management Trustee a detailed statement of how defendants will

comply with Section VI.A prior to the closing of the Transaction, including but not limited

to:  (1) marketing plans for the sale of mobile wireless telecommunications services by the

mobile wireless businesses to be divested, including customer retention plans and

promotions; (2) the designation of a management team who will have responsibility for and

manage the Divestiture Assets prior to the closing of the Transaction, identifying any

changes from prefiling staffing; (3) plans for retention of employees and payment of

retention bonuses to employees whose primary duties related to the mobile wireless

telecommunications businesses to be divested; and (4) plans for network maintenance,

repair improvements, and upgrades of the Divestiture Assets.

      O.  This Preservation of Assets Order shall remain in effect until consummation of

the divestitures required by the proposed Final Judgment or until further order of the Court.

      Dated: September  8 , 2006.


                              s/Richard H. Kyle
                              United States District Judge